UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN A. HARRINGTON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Jane M. Beckering

Case No. 1:22-cv-19

**REPORT AND RECOMMENDATION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act prior to June 1, 2018.

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff was not disabled within the meaning of the Act prior to June 1, 2018. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

    Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed applications for DIB and SSI on January 15, 2013, alleging that he had been disabled since January 7, 2013, due to lower extremity injuries, severe sleep apnea, poor vision, back and hip pain, and depression and cognitive limitations. (PageID.115–16, 130-31.) Plaintiff was 45 years old at his alleged onset date. (PageID.130.) After his applications were denied, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On July 25, 2014, ALJ Donna J. Grit held a hearing on Plaintiff's applications. (PageID.71–111.) On January 26, 2015, ALJ Grit issued a written decision denying Plaintiff's applications (PageID.51–64), and the Appeals Council denied review. (PageID.35–37.) Following an appeal to this Court, the case was remanded for further proceedings. *See Harrington v. Comm'r of Soc. Sec.*, No. 1:16-cv-898, 2017 WL 2684283 (W.D. Mich. June 22, 2017).

On remand, ALJ Grit held another hearing on March 1, 2018, and denied Plaintiff's applications on April 4, 2018. (PageID.645–69, 683–723.) After the Appeals Council denied review (PageID.639–41), Plaintiff filed a second appeal to this Court. On August 26, 2020, the matter was remanded for further proceedings. In particular, the Commissioner was to: "(1) establish whether Plaintiff is disabled under the medical vocational guidelines and applicable regulations; and (2) determine whether the standing and walking limitation in Plaintiff's RFC would require a limitation in lifting and carrying otherwise required by light work." *Harrington v. Comm'r of Soc. Sec.*, No. 1:19-CV-401, 2020 WL 5036245, at *3 (W.D. Mich. Aug. 26. 2020).

On March 8, 2021, ALJ Nicholas M. Ohanesian held a telephone hearing in which Plaintiff, his spouse, and James Lozer, an impartial vocational expert (VE), testified. (PageID.2813–70.) On March 23, 2021, ALJ Ohanesian issued a partially favorable decision, finding that Plaintiff had become disabled as of June 1, 2018, but was not disabled prior to that date. (PageID.2778–2800.) The Appeals Council denied Plaintiff's request for review on November 17, 2021. (PageID.2762–

3

65.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on January 7, 2022.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden of establishing the right to benefits, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2017, and had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that Plaintiff suffered from severe impairments of: (1) degenerative disc disease of the cervical and lumbar spine; (2) paresthesia of the left upper extremity; (3) degenerative joint disease of the right hip; (4) gastrocnemius and Achilles tendonitis of the left lower extremity; (5) degenerative joint disease of the bilateral hands; (6) right lower extremity fracture with acquired leg length discrepancy; (7) obesity; (8) obstructive sleep apnea; and (8) depression and anxiety, all of which, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.2780–83.)

The ALJ found that, prior to June 1, 2018, Plaintiff retained the RFC to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:

> The claimant is able to lift and carry a maximum of 20 pounds occasionally and a maximum of 10 pounds frequently. He is able to stand or walk for 2 hours and to sit for 6 hours in an eight-hour workday. He cannot use ladders, ropes, or scaffolds and can occasionally climb stairs and ramps. He can perform occasional balancing, stooping, kneeling, crouching, and crawling. He can tolerate no exposure to vibration and occasional exposure to extremes of cold and humidity. He can understand, remember, and perform simple tasks and make simple decisions; he

> has the ability to adapt to occasional changes in workplace routines, and can have no interaction with the public. The claimant must use a cane for ambulation.

(PageID.2784.)

The ALJ found that Plaintiff could not perform his past relevant work (PageID.2796), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of assembler, packer, and inspector, 800,000 of which existed in the national economy. (PageID.2797.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ thus concluded that Plaintiff was not entitled to benefits prior to June 1, 2018. The ALJ found, however, that Plaintiff met the requirements of Listing 1.04A as of June 1, 2018, and was entitled to benefits as of that date through the date of the decision. (PageID.2798–99.)

## DISCUSSION

Plaintiff raises three issues in his appeal: (1) the ALJ failed to account for Plaintiff's leg swelling and need to elevate his lower extremities in his RFC finding; (2) the ALJ erred in failing to find Plaintiff disabled under the Medical-Vocational Guidelines as of his 50th birthday; and (3) the ALJ's onset date finding is not supported by substantial evidence. (ECF No. 14 at PageID.4193.)

### I. RFC Determination

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96-8P, 1996

6

WL 374184 at *1 (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). While the ALJ determines the claimant's RFC, that finding must be supported by substantial evidence. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012).

Plaintiff contends that the ALJ's RFC determination is faulty because it omitted a limitation for Plaintiff's need to elevate his legs. The ALJ acknowledged Plaintiff's asserted need, but found the record did not support that limitation. In particular, the ALJ noted that following surgery on Plaintiff's left lower extremity in January 2013, examinations "were generally normal and did not show significant swelling." (PageID.2785.) For example, the ALJ noted, three months after the surgery, Plaintiff had only mild swelling in his left foot. (PageID.2786 (citing PageID.426, 502).) By October 2013, Plaintiff reported no change in edema, but the physical exam revealed "decreased swelling and improved range of motion." (*Id.* (citing PageID.500).) Subsequent examinations, including one on June 23, 2014, indicated largely normal findings, including no edema. (*Id.* (citing PageID.548).) He further observed that a podiatry exam for left foot pain three years later, in July 2017, reported normal findings, including no edema. (PageID.2787 (citing PageID.2237).)

Citing other records, Plaintiff contends that the ALJ failed to acknowledge "extensive evidence" supporting his asserted limitation. (ECF No. 14 at PageID.4202.) Much of the evidence

Plaintiff cites, however, was from the months following his surgery and is consistent with the ALJ's observation that exam findings during that time did not show significant swelling of the lower extremity. (PageID.460, 461, 474, 486 ("moderate swelling"), 500 ("decreased swelling"), 502 ("mild swelling").) Nonetheless, as the ALJ set out in some detail, the record is replete with exam findings throughout the relevant period reporting no swelling. (PageID.1427, 1487, 1499, 1954, 1988, 2221, 1643, 2237, 3111, 3293, 3584, 4005, 4113.) Plaintiff also notes that his treating physician, Dr. Wabekee, indicated multiple times that Plaintiff would need to elevate his legs multiple times throughout the day. (PageID.2569, 2757.) Yet, the ALJ declined to credit these opinions because they were unsupported by objective findings and based primarily on Plaintiff's subjective complaints. (PageID.2792–93.) Plaintiff does not challenge the ALJ's treatment of these opinions in his appeal.

In short, the ALJ was not bound to credit Plaintiff's subjective complaints if they were undermined by other evidence in the record. *See Simons v. Barnhart*, 114 F. App'x 727, 732 (6th Cir. 2004) ("The ALJ . . . was not bound to accept Simons's subjective complaints if the evidence in the record demonstrated otherwise."). Here, the ALJ properly considered objective examination findings in assessing whether Plaintiff's subjective symptoms were fully supported. SSR 16-3p, 2016 WL 1119029, at *4 (stating that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). Although Plaintiff points to other evidence in the record to support his argument, the Court must affirm the ALJ's findings "so long as substantial evidence also supports the conclusion reached by the ALJ."

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Because substantial evidence supports the ALJ's finding, this argument lacks merit.[2]

### II. Failure to Comply with SSR 83-12

At step five, an ALJ may employ the Medical-Vocational Guidelines, or "grids," found at 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, to determine whether a claimant is disabled. The grids provide a series of vocational patterns which "allow the ALJ to take notice of the number of jobs available in the national economy." *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 463 (6th Cir. 2007) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 (6th Cir. 2001)). The circumstances in which the grids apply are fairly limited:

> Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled. However, . . . [w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations.

20 C.F.R. Pt. 404, Subpt. P, App'x 2 § 200.00(a). When the claimant's characteristics "do not precisely match any specific rule, h[is] residual functional capacity . . . is used as the appropriate framework to determine whether []he is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 530 (6th Cir. 1981)).

---

[2] Although not raised as a separate argument, Plaintiff contends that the RFC was internally inconsistent because the ALJ improperly defined Plaintiff's RFC as "light" when the standing/walking limitations were more consistent with a sedentary RFC. (ECF No. 14 at PageID.4193–94.) This argument fails because, as the Sixth Circuit has recognized, an ALJ is not bound to assign a claimant a sedentary RFC simply because he is unable to perform a full range of light work. *Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 429 (6th Cir. 2015).

In Plaintiff's case, if he retained the capacity to perform a full range of light work, the grids would have directed a finding of "not disabled." See 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 202.14, 202.21. On the other hand, because Plaintiff's age category changed to "Closely approaching advanced age" on June 14, 2017, if he were limited to sedentary work, the applicable grid rule would have directed a finding of "disabled." *Id.* § 202.14. The ALJ found that Plaintiff was capable of performing a reduced range of light work because, while he was capable of performing the lifting requirements, he was limited to two hours of standing and walking. (PageID.2784, 2797.) Because Plaintiff's RFC fell in between two grid rules directing opposite conclusions, Social Security Ruling 83-12 advised the ALJ to consider the following:

> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regularity definition, it could indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

SSR 83-13, 1983 WL 31253, at *2–3; *see also* POMs DI 25025.015(D), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025015 (last visited October 28, 2022).

At the hearing, in response to the ALJ's hypothetical as to whether a person of Plaintiff's age, education, work experience, and RFC could perform work in the national economy, the VE identified three positions, all of which were in the light, unskilled category, that Plaintiff could perform. (PageID.2853–54.) The VE testified that a person limited to standing two hours could perform the lifting requirements for these jobs because they could be performed either seated or

standing, and the lifting could be accomplished from either position. (PageID.2856.) The VE further testified that "[t]here really is no carrying[, because] [y]ou're at a workstation in these positions." (*Id.*) The ALJ appropriately relied on this testimony "[t]o determine the extent to which [the standing and walking] limitations eroded the unskilled light occupational base." (PageID.2797.) This was a proper application of SSR 83-12. *See Wright*, 321 F.3d at 616 (ALJ properly applied SSR 83-12 by relying on vocational expert's testimony to determine the size of the remaining occupational base in light of the plaintiff's RFC); *Shannon v. Comm'r of Soc. Sec.* No. 16-cv-10179, 2017 WL 6460298, at *4 (E.D. Mich. Oct. 13, 2017), *report and recommendation adopted*, 2017 WL 6450889 (E.D. Mich. Dec. 18, 2017) (concluding that "[c]onsistent with SSR 83-12, the ALJ proceeded to assess the extent to which Plaintiff's 'additional limitations' would erode the job base. . . . [by] [r]elying on the testimony of the vocational expert"); *Cooper v. Astrue*, No. 2:10-cv-168, 2011 WL 1118514, at *12 (S.D. Ohio Jan. 25, 2011), *report and recommendation adopted*, 2011 WL 1125185 (S.D. Ohio Mar. 24, 2011) (holding that the ALJ was not required to find that the plaintiff's exertional capacity was "significantly reduced" in light of the vocational expert's testimony that 10,000 light jobs existed in the region for an individual with the plaintiff's RFC).

Plaintiff contends that the ALJ failed to comply with the court's directives on remand by not "answering the pertinent question here," which is "whether those jobs [the VE identified] are 'significantly reduced' from the definition of 'light.'" (ECF No. 14 at PageId.4198.) This argument lacks merit for several reasons. First, Plaintiff cites no authority requiring an ALJ to determine where a particular job falls on the spectrum between exertional levels in answering whether a claimant's "exertional capacity is significantly reduced" under SSR 83-12. In fact, nothing in the ruling even suggests that an ALJ must make an express determination that a claimant's exertional

11

capacity is "slightly reduced" or "significantly reduced." Rather, these are merely *considerations* that are fleshed out by examining the extent to which the occupational base is eroded, as informed by vocational expert testimony. SSR 83-12, 1983 WL 31253 at *2 ("Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource."); *see also Laymon v. Comm'r of Soc. Sec.*, No. 1:18-CV-21, 2019 WL 1552500, at * 5 (E.D. Tenn. Feb. 12, 2019) (rejecting the plaintiff's contention that SSR 83-12 required the ALJ to "delve deeper" into the effect on the occupational base instead of merely relying on the VE's testimony that there were 60,000 jobs the plaintiff could perform because "[t]his is all [the ALJ] was required to do"); *Lash v. Comm'r of Soc. Sec.*, No. 1:15-CV-0488, 2016 WL 2892668, at *7 (W.D. Mich. May 18, 2016) (the ALJ "did not determine that the Plaintiff had 'a significantly reduced capacity' for light work," but instead correctly applied SSR 83-12 by questioning a VE whether there existed a significant number or jobs the plaintiff could perform). Nothing out of the ordinary is required:

> The usual requirements apply for a clear, persuasive, orderly rationale, reflecting the sequential evaluation process, with recitations of the evidence and specific findings of fact. . . . Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 83-12, 1983 WL 31253, at *5. The ALJ fully complied with these requirements. Finally, even if the ALJ found that Plaintiff's exertional capacity was "significantly reduced," it "could justify," but would not require, a finding that Plaintiff was disabled. *Laymon*, 2019 WL 1552500, at *4.

Accordingly, because the ALJ found that Plaintiff was not disabled under the grids and that the standing and walking limitation did not warrant a limitation for lifting and carrying, the ALJ complied with the remand order (PageID.2915), and his determination is supported by substantial evidence.

### III. Onset Finding

As noted, the ALJ found that Plaintiff became disabled on June 1, 2018, as a result of meeting Listing 1.04A for disorders of the spine. (PageID.2798.) The ALJ relied, in part, upon imaging studies of Plaintiff's cervical and lumbar spine taken that date showing degenerative changes at C4/5 and C3/4 with impingement of the ventral surface of the spinal cord and disc protrusion at L5/S1 effacing the origin of the right S1 nerve root, a small annular tear at L1/2, and subligamentous disc bulge at L4/5 narrowing the right neural foramina. (PageID.2798, 3381, 3418.) In addition, the ALJ cited examination findings and treatment notes after that date supporting that Plaintiff met the requirements of Listing 1.04A as of June 1, 2018. (PageID.2798–99.)

In his opening brief, Plaintiff argued that the ALJ's onset finding was not supported by substantial evidence because he failed to consider that, as early as January 2017, a cervical MRI had been recommended but denied by insurance. (ECF No. 14 at PageID.4201–02 (citing PageID.1660).) Plaintiff argued that the ALJ failed to consider the impact of his lack of insurance on his ability to seek treatment, as required by SSR 18-3p, 2018 WL 4945641. (*Id.* at PageID.4202.) In response, the Commissioner argued, and Plaintiff does not dispute, that the ALJ's onset date finding was supported by substantial evidence, and that, by its own terms, SSR 18-3p does not apply to these circumstances because it concerns the effect of a claimant's failure to follow prescribed treatment that is expected to restore the claimant's ability to work. (ECF No. 17 at PageID.4222.) The Commissioner further argued that Plaintiff failed to meet his burden of demonstrating that he met the requirements of Listing 1.04A prior to June 1, 2018, and pointed out that even if Plaintiff could not have afforded the MRI studies to show nerve root compression prior to June 1, 2018, the ALJ cited evidence that as of January 2017, Plaintiff had nearly full lower extremity strength, full arm strength, and symmetrical muscles without atrophy or deformity. (*Id.*

13

(citing PageID.2366 and 2787).) In his reply, Plaintiff cited, for the first time, evidence he claims shows that he met Listing 1.04A earlier than the ALJ found, including findings from an August 2014 consultative examination (PageID.618–19); examination findings from May 2015 (PageID.4037–38); Plaintiff's complaints to his doctor of middle and lower back pain for several years in June 2016 (PageID.1485); and examination findings from October 2017 (PageID.4046), which Plaintiff notes revealed severe joint restriction at L5, which was precisely that same area that a 2018 EMG confirmed radiculopathy. (ECF No. 18 at PageID.4227–28.)

The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). To satisfy this burden, the claimant must show he meets all of the criteria for that listing. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). An impairment that meets only some of the requirements of a listing does not qualify despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

> Listing 1.04A requires the following:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root . . . or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. To carry his burden, Plaintiff must show that he meets the listing criteria for a continuous period of 12 months. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 499 (6th Cir. 2006); *see* 20 C.F.R. § 404.1525(c)(4).

Plaintiff has not met his burden because he fails demonstrate that all of the requirements of the listing are met. For example, as it relates to his lumbar spine pain, none of the evidence

Plaintiff cites includes positive straight leg raises or atrophy with associated muscle loss. In short, Plaintiff fails to set forth how the cited evidence demonstrates that he meets all the requirements of the listing. Moreover, in his step-three analysis, the ALJ pointed to physical examination findings from 2013 to 2016 showing symmetrical muscle groups without atrophy or deformity and noting that Plaintiff demonstrated a normal gait. (PageID.2782 (citing PageID.490, 548, 619, and 2096.) This evidence undercuts the evidence Plaintiff cites in his reply. Finally, rather than demonstrating that he met the listing requirements continuously for 12 months, Plaintiff merely cites a collection of evidence spanning several years. As noted in *Biestek v. Commissioner of Social Security*, No. 16-cv-10422, 2017 WL 1214456 (E.D. Mich. Feb. 24, 2017), *report and recommendation adopted* 2017 WL 1173775 (E.D. Mich. Mar. 30, 2017):

> For a disorder of the spine to meet Listing 1.04A, the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months. Stated differently, when the paragraph A criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A.

*Id.* *4 (internal quotations and citations omitted). That is the precise situation here.

Accordingly, this argument lacks merit.

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: November 8, 2022  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

# NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).